Act waives sovereign immunity for the tort actions of federal employees. It does not waive sovereign immunity for the acts of independent contractors. For almost two decades, this court has applied a test in FTCA independent contractor cases, and that test was derived from two Supreme Court cases and from Section 220 of the Second Restatement of Agency. What do you do with the Creel case? What do I do with the Creel case? I say that the Creel case should have controlled the disposition of this case because it is on all fours factually. The district court distinguished it on four grounds, which we would say should not have been dispositive. Those four grounds were that the physician in Creel, who was an orthopedic surgeon, just like the orthopedic surgeon in this case, that he contracted in Creel directly with the VA. But in fact, this court said in the Lincus decision that whether or not the physician contracts directly with the government doesn't matter, that it's the same whether the physician contracts directly or is hired through an intermediary like a staffing company or, in the case of Peacock, through the University of Texas at Dallas in that case. So that should not have weighed in favor. The second reason given by the district court was that the individual physician in Creel agreed to personally identify the government. But in fact, in this case, the United States had the . . . the only contract the United States had was with the staffing agency, and the government actually did require that the staffing company had to provide professional liability insurance. The only reason that the, at that time, unidentified contract physician was not also required to maintain professional liability insurance is because the staffing company was already doing that. There was no need to have duplicative coverage. The third reason given was that the individual physician in Creel was able to hire staff. That's a function of the fact that the, in this case, the prime contractor was the staffing company. I mean, your argument, as I understand it, boils down to, and correct me if I'm wrong, it boils down to whether there was any exercise of control over a doctor's medical judgment. That's exactly right, Your Honor. In fact, the Supreme Court has said you look at whether the government retained control over the detailed physical performance. And in this case, it's the physical performance of those medical services. The exercise, not simply the services, but the exercise of medical judgment, the diagnosis and treatment. And in this case, the contract, and indeed, I believe in every contract that this Court has looked at involving a contract physician, there has always been language that said that the government does not retain control of the medical professional aspects of the services rendered. So that was in this contract, the contract that the VA had with the staffing company. It was also in the contract in Creel. And I believe it was in all four contracts, every case this Court has decided that was published. So Creel v. United States, Peacock v. United States, Linkus v. United States, and Broussard v. United States. I am not aware of any case in any court of appeals in which the contract included that language, and nonetheless, the contract physician was found to be a Federal employee. Now, the plaintiff doesn't address any of that. The plaintiff does not address the Creel decision, except to mention it in the standard of review. The district court tried to distinguish it on those three grounds I listed, and also on one more ground, which was that the government had actually exercised control over things like the hours of work and the day that surgery would be held and where the surgery would be located. But that's not the exercise of medical judgment. Those are peripheral administrative details. That's the way the Fourth Circuit described it in Wood. And they are not part of the exercise of the control over medical judgment. So here, it's not just a question of control. There was no control by the government of the exercise of medical judgment, but there were the other factors in the test. And we ran through all of them in our opening brief, just as this Court ran through them in Creel. And our point is, the balance in this case is exactly the same as it was in Creel. There were a couple of things that militated in favor of looking at Dr. Hoffman as an employee, but the vast majority weighed in favor of finding this person to be an independent contractor. So we should have reached the same result, and the district court did not. That's the legal error we would like this Court to reverse. If the Court had any specific questions on the application of this Court's ten-factor test, I'd be happy to address them, but otherwise I'd move briefly on to the arguments that the plaintiffs have raised about Community for Creative Nonviolence v. Reed. I'm sorry, about what? The plaintiffs have not argued that Dr. Hoffman was an independent contractor, was a federal employee under this Court's standard, the ten-factor test. Instead, they're arguing that a different standard should apply, and that is the standard taken from Community for Creative Nonviolence v. Reed. That is the focus of their brief. So that case is a Copyright Act case. It is not a Federal Tort Claims Act case. There's some overlap. It's a thirteen-factor test instead of a ten-factor test, and there's some overlap with this Court's test, but it incorporates at least five factors that are specifically addressing copyright concerns. The Supreme Court has never applied the Reed test in any FTCA action, and neither has this Court. In fact, the plaintiffs don't give any reason why this Court should suddenly switch its test. But as we point out in our reply brief, even under that test, Dr. Hoffman is an independent contractor. Now, I'd be happy to run through some of the factors in that test, if the Court would like. We did run through them in our reply brief. A couple of the factors are basically not really relevant in this case, such as whether the hiring party has the right to assign additional projects. That wasn't really relevant here. There was no argument made that the VA tried to assign additional work outside the orthopedic surgery specialty to Dr. Hoffman. And then there were a couple of the additional factors, which are not generally relevant. They actually weigh in favor of finding independent contractor status, such as the provision of employee benefits and the tax treatment of the hired party, because just as in the Creel case, the VA did not provide any employee benefits to Dr. Hoffman. It had no relationship with him. Its only relationship was with the staffing company. And the contract with the staffing company expressly said, this individual is not to be treated as a VA employee. And more importantly, we, the government, are not responsible for taking care of his Social Security payments or his tax withholding. He doesn't get vacation or sick leave. Well, those are all maybe make-weight arguments, but they don't really matter, do they? It's really the control test, as you've already enunciated. Control, as this Court has said, is a critical factor. It is not the only factor, but as you say, it is a critical factor. And on that point here, it's clear. The government did not exercise control over his judgment. That means that there was never someone overseeing when he—no one was in the room when he decided how to treat Mr. Mantiply. No one was second-guessing him. No one had to sign off on his—when he wrote prescriptions, when Dr. Hoffman made decisions about whether or not surgery was warranted. No one was in there verifying his decision. He was an independent contractor. Wouldn't that be true even if he was directly employed by the hospital? Nobody would be in the operating room giving him supervision. That's correct. He would still have been—he still would have been in control of his own medical judgment. But he would have been an employee of the hospital if that had been the case. He would have been, and his entire employment relationship would have been different. insinuating, inserting a company that provides doctors between the hospital and the doctor. That's true. Here you do have an intermediary, and the government did not have any direct relationship. But when the government has employed someone under its statutory authority, the entire relationship is changed because suddenly the government is giving this person a pension. The person is entitled to civil service protections. He's getting vacation and sick leave and with tax withholding and Social Security benefits. And all of those things are coming to him because he is a federal employee. That's the distinction. Dr. Hoffman got none of that because he was employed by the staffing company. He got none of it from the government, but he got it from his employer. He got some of that from his employer. His employer, the staffing company, hired him as an independent contractor rather than their full employee. So they pushed some of those responsibilities onto him. Is that what the record reflects? Yes, Your Honor. He's an independent contractor with this employment company? Yes, Your Honor. The second—the contract between the staffing company and Dr. Hoffman is in our excerpts of record. And it says you are being employed as an independent contractor. I don't use that label. I'm talking about what actually happened. Did they give him a W-2 or a 1099? That is not in the record. But the contract says that—the contract says on behalf of the staffing company, you have to handle your own withholding. You have to handle your own Social Security payments. Presumably that occurred. Again, it's not in the record, but that was the arrangement they had. And there was certainly nothing said by the plaintiffs that contradicted that. So he was not even—he was the independent contractor to an independent contractor. It's that much more attenuated. I did reserve some time for rebuttal if the Court has no— Your Honor, I didn't—Your Honors, I didn't pick up the last few remarks with clarity, but they seem to go to who kept the bargain and what was the bargain. Well, CAG, rent-a-doctor comp health, promised the United States in a two-party contract, of which Dr. Hoffman is not a signatory, promised the United States they would pay withholding, payroll tax, et cetera, and insure him. They didn't because the contract they had signed with him when he became their independent contractor, CHG and Dr. Hoffman, indicated that they would in no circumstance pay workers' comp, withholding, et cetera. And furthermore, when you look at the insurance policy, which is in there in the personnel file of Dr. Hoffman, yeah, there's insurance, but the insurance is for rent-a-doctor. It does mention at the end of it that they are insured for the acts or omissions giving rise to liability on the part of Dr. Hoffman, but think about it. That's not a policy insuring Dr. Hoffman. In an earlier version of a brief or something in district court, I made the statement that my client and Dr. Hoffman were equally screwed by this situation. But anyway, back to another point made by Ms. Soni, and that is that Creel is the case to take, to analyze. It doesn't even need any analysis. You just overrule that judge based on the Fifth Circuit decision in Creel. It's not that simple. And then I'm challenged for not having briefed it. Well, the vast majority of Judge Drell's approval with modifications of Magistrate Kirk's recommendation, his only modifications were to remove any doubts Kirk left by saying that this is a close case. Judge Drell said, this man was in every way an employee. It's at the end of the ruling on denying the jurisdictional lack. But anyway, I wasn't going to criticize the court in Creel until I, in reviewing it, I picked up something I hadn't noted before. They are, they stated that with regard to factors A through D, the first being control, that he, they pointed more to independent contractor status. Immediately followed by that, he was allowed to practice unsupervised traditional areas of activity in medicine, judgment, decisions as to motive therapy and post-therapy treatment. Well, both what Creel and Missoni are saying is contradictory to Broussard. Broussard is very clear, and it follows the 1958 Second Restatement of Agency and the newer commentary under the Third Restatement of Agency, which came out in 1996. Didn't change the text of Section 220, but the commentary is added to. So you don't hold it against them, you just don't weigh it as heavily. Or you have to have a test because of the attenuated aspect of control. That doesn't mean it's a negative when you come up with a scorecard. They came up with four to three things indicating independent contractor status. And one of them was the lack of control. It doesn't work that way. That's not philosophically logical. Restatement 220 says that the physician, well, the cook, the ship captain, the physician, that control becomes so attenuated in those other aspects of employment. But they counted it against him as a indicia of independent contractor status. It's not. It's a little bit more difficult a concept than that proposed by opposing counsel. It's not heavily weighed, and it frankly doesn't weigh one way or the other. And I don't remember which case, but it should be in such situations as this deemed irrelevant, the control aspect during the performance of one's duties. Also, the remark about there being some, rather a leap of faith, there ought to be some recognition of the fact that this court has affirmed every decision holding somebody on an independent contractor when there are contracts that say they will reserve and utilize independent decision-making and judgment when it comes to purely medical issues. Well, if they're not going to be an employee, then yeah, you better say that because it's subsumed into an employment contract with a hospital, unanimous knowledge that it is a violation of ethical standards for a physician to yield any degree of his independence. There's no difference whatsoever. So they put it in writing if they want to have a sham contract indicating that this guy is somehow not an employee. So I stick with the distinctions raised by Judge Drell. I don't think I could have expressed them any more eloquently or tersely. Does the record reflect whether this particular hospital directly employed any MDs or that they got all their MDs from these two companies? Honestly, I don't know. In fact, I assumed when filing this suit, given what my client had told me, the insignia on Dr. Hoffman, VA Medical Center, Alexandria, office in there in the hospital to meet with him and talk about stuff. My experience up to this point has been that ER doctors are by and large independent contractors because they're given their own little bailiwick within the campus, within the institution. And that's always been the case. So I was somewhat stunned when I belatedly figured or was informed, oh wait, we've discovered he's an independent contractor. But I knew better than to argue on estoppel or prejudice because it requires ill will. And I have no method nor time to try and dig into that and prove it. Same as the equitable estoppel for presenting somebody as a government employee requires ill will. They must intentionally present the guy in a misrepresented fashion to create situations like this. And the other thing, of course, it has always been my thought, my goodness, with the GI Bill of Rights, isn't this a non-delegable duty of the United States? But then I read a log written by Justice Rehnquist and got a little confused in reading it. And I sent it to a friend of mine, a professor at the University of Texas. And as for his opinion, he said, well, there goes your non-delegable duty argument. And by the way, I think Logue is on my side. It says that there being no control, said it would be reasonable to get interested in the theory that traditional government work, if completely contracted out, maintains government liability. And that's no way to escape it. But the decision in Logue said lack of control, same as in Orleans, same as in Logue. No element of control whatsoever. And that was his point. I don't think he was making an across-the-board point. But in fact, the United States, through opposing counsel, is the first juridical or personal that I've heard say that the strict control test still maintains. We've got the seventh, the eighth, no, I'm sorry, seventh, tenth, fifth, second circuits, just in the cases I've made note of today, that recognize the existence of the need for a modified control. But they always say we don't get to the point where we have to apply such a thing. But as argued in one case, in front of this circuit, it was said just that. But I think it is the time it has to be faced. Judge Drell is a very intelligent guy. And he wrote a 54-page decision on the merits. He wrote the articulate decision on jurisdiction. And of course, it's a de novo matter, but it's also a manifest error when it comes to his appreciation of the facts onto which to affix given legal principles. But I have no idea how you pronounce Cilicek, I don't know. But on Cilicek, C-I-L, the court said it is more productive when a doctor has to be able, or he's in violation of his ethical duties, has to be able to exercise his quiet, private, thoughtful judgment in matters of diagnosis, options for treatment, and after care. It is more productive, therefore, to look at the other aspects of the employment relationship. It's been specifically adopted in Cilicek and in the other circuits. They've just continually come up with the statement, we don't have to get into establishing the outer limits of this modified control standard. And I don't think this court does either, because I believe that the factual appreciation from the evidence is that this guy is, as an employee, as he can be. But if it has to be applied or defined, then this is the case to do it. This, what is it? It's a guy comes in at 8 o'clock till 4 o'clock every day. He's given a paid vacation. Mercer in Creel was given no vacation. And paid vacation is something I've never heard of in an independent contractor scenario. And look at his deposition. Well, it sounds like you were already employed, Dr. Hoffman. He said, well, I essentially was. We were just haggling over the money. He had applied for tenureship as an employee before the act of malpractice occurred, months, January of 2008. He signed off on it, they did. It was sent to the comp panel, and the comp panel approved it. Now, whether the Office of Personnel Management has to get involved, I just don't know. But that was sent in, an application, and it was approved. And then you don't hear anything until July of 2008, very shortly after all acts of malpractice had occurred. But then he took the job. If you all look in the record, you'll see that he originally, or they agreed originally in January to $350,000 a year with rent-a-doctor out of the picture. The final figure in July of 2008 was $350,000 a year for which he was hired. Do you all have additional questions? I don't want to pour through these. But the statement by opposing counsel, quote, this is whether the agency controlled Dr. Hoffman's treatment of patients, and it did not, period, end quote. That defies Broussard, which is an excellent decision, and it's a correct decision for reasons not present in this case. It defies the restatement of torts, I mean it's, I don't know the single court of appeal that maintains that a strict control doctrine still maintains with regard to physicians. Even the restatement of agency says the ship captain, ship owner calls and says, I want that ship docked tomorrow. We need to get that oil off and refined. The captain says, I ain't driving through this storm. You do what I say. No, sir. He's an employee and he keeps on going. When somebody gets hurt, the owner is sued. He's still liable under respondeat superior because the captain had an obligation and a duty in his independent judgment and command to proceed without third party input from afar. The control issue with the doctor, well, we've covered it. I mean to make a connection between these independent contractor things, recognizing a doctor's conditional independence in surgery, etc., that goes without saying. That's not some smoking gun or self-destructive phrase to put in a contract to keep from being construed as employment. The doctor would be sanctioned, disciplined, or defrocked, spayed and neutered by the medical examiners for forfeiting any control in his exercise of sound, independent, medical, meditated decision making. Have I talked enough? Thank you, Mr. Thank you, Sonia. You've saved time for the bottle. I'd like to address just a couple of points that my opposing counsel made. Um, and one question that your honor asked about whether the hospital actually employed anyone directly. Yes, it did. And it attempted to employ an orthopedic surgeon directly. It advertised for the position and as is unfortunately the case sometimes in rural areas, it was very difficult to get anyone to move there. That is why the secretary resorted to using a physician staffing company. Because the physician staffing company does the legwork. They find, they locate nationally a candidate, they screen them, they make sure their credentials are in order, and they often will pay to move the person to the location. And that's what happened in this case. They located Dr. Hoffman, who had not responded to the government's solicitation. So, he was then hired as an independent contractor. But my understanding is that this particular VA has quite a number of full-time employees. It's often the case that the secretary has to make a decision in particular slots about whether or not to hire a physician. And the difference between the day-to-day work and supervision of Dr. Hoffman is the fact that he was located by the RentaDoc instead of by the hospital itself. But once he got there, he was treated the same way by the hospital as those who were direct employees. That's right. That's how independent contracting is supposed to work, Your Honor. But the actual employee relationship, and believe me, Dr. Hoffman would have experienced this. He didn't get, contrary to what the plaintiff's counsel has said, he did not get paid vacations from the government. He did not get sick leave. If you look at the contract, he did not get those things. He did not have his withholding. He did not have all the benefits of being a federal employee. He had no civil service protection. He got no pension from the government. So no matter what Dr. Hoffman may have experienced personally about, well, nothing changed for me, he knows that that's not the case. Because he also knows that when he was hired, he came on full-time at the end of July after the events in this case. When he was hired full-time by the government under statutory authority, his income went up. He got paid directly by the government, which had never happened before. And he started getting $350,000 a year. Before that, when he was an independent contractor, the government paid $459,000 a year to, that's what it worked out, it was an hourly rate, but that's what the contract said, to the staffing company. And Dr. Hoffman said in his deposition he got less than half of that. So he knew there was a difference between being an independent contractor and being a full government employee. Was he an independent contractor of the staffing company, or was he an employee? I believe he was an independent contractor. Just from my looking at the contract, the text of the contract seems to refer to him as an independent contractor, meaning an independent contractor as to that relationship between the staffing company and the doctor. So if I can address a couple of the other questions that came up. When the plaintiff's counsel says that the government said the only issue in this case is control, in our reply brief, I believe that was in reference to the plaintiff's argument that the staffing company did not itself exercise any control over Dr. Hoffman. Well, that's because the staffing company's view was Dr. Hoffman was an independent contractor. So therefore, they did not exercise any control over him either. And our point was, the question is not who exercised control, or why didn't the staffing company exercise control? The question is, did the government exercise control over his medical judgment? And the answer is no. So that's a more full description. It's not exactly as the plaintiff has described. The plaintiff mentioned Silecek and Salomon. As we point out in our brief, those are Title VII cases. They use a different standard there. There are different concerns at issue. It is not FTCA. The plaintiff's counsel referenced the Tenth Circuit saying they use a modified control test in Broussard. This court actually said that it wasn't clear that anybody really uses a strict control test. That's why you have those other factors and why you do consider them in the individual case. So we were not saying this is a strict control test. And this court has said it isn't clear that anyone uses that. On the question of whether this is a sham contract, plaintiffs, I'm at a standstill. Your case is under submission. Thank you. Thank you very much.